# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Arbitration of
Certain Controversies Between

THE LEGACY AGENCY, INC.,

                    Petitioner,

      -against-

BRODIE SCOFFIELD, MEGHAN
WHELAN, and CHRIS AMEZQUITA,

                Respondents.

No. 1:20-cv-5771 (JGK)

## BRIEF OF THE MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF THE VERIFIED PETITION TO CONFIRM THE ARBITRATION AWARD

Ian Penny
General Counsel
MAJOR LEAGUE BASEBALL
  PLAYERS ASSOCIATION
12 E. 49th Street
New York, NY 10017
(202) 826-0808

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
ejoyce@sidley.com

Virginia A. Seitz (*pro hac vice
application forthcoming*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
vseitz@sidley.com

*Counsel for Amicus Curiae Major League Baseball Players Association*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTEREST OF *AMICUS CURIAE* ...................................................................................1

BACKGROUND ...............................................................................................................2

ARGUMENT .....................................................................................................................5

INTRODUCTION ..............................................................................................................5

I.      Courts Review Arbitral Awards, Including The Arbitrator's Contract Interpretations
        And Remedial Decisions, With Great Deference. .................................................7

        A.      Standard of Review.....................................................................................7

        B.      The Arbitrator's Reading of the Regulations and Factual Findings Are Entitled
                to Deference ............................................................................................10

II.     The Arbitrator Is A Distinguished Professional And Experienced Sports Arbitrator. ......17

CONCLUSION.................................................................................................................19

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*187 Concourse Assocs. v. Fishman*,
    399 F.3d 524 (2d Cir. 2005).................................................................................13

*Andros Compania Maritima, S.A. v. Marc Rich & Co.*,
    579 F.2d 691 (2d Cir. 1978)...................................................................................9

*Black v. NFL Players Ass'n*,
    87 F. Supp. 2d 1 (D.D.C. 2000) .............................................................................1

*Bragg v. Kalikow Family P'ship*,
    No. 19-cv-8801 (KPF), 2020 U.S. Dist. LEXIS 76723 (S.D.N.Y. Apr. 30,
    2020) ....................................................................................................................13

*Burt Bldg. Materials Corp. v. Int'l Bhd. of Teamsters*,
    18 N.Y.2d 556 (1966) ............................................................................................9

*Callanan v. Keesville, Ausable Chasm & Lake Champlain R.R.*,
    199 N.Y. 268 (1910) ............................................................................................11

*Canfield v. Reynolds*,
    631 F.2d 169 (2d Cir. 1980).................................................................................11

*Collins v. Nat'l Basketball Players Ass'n*,
    850 F. Supp. 1468 (D. Colo. 1991), *aff'd*, 976 F.2d 740 (10th Cir. 1992) ...............1

*E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*,
    531 U.S. 57 (2000)................................................................................................9

*First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*,
    14 F. Supp. 2d 302 (S.D.N.Y. 1998), *rev'd on other grounds*, 193 F.3d 109
    (2d Cir. 1999)......................................................................................................11

*Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*,
    111 F.3d 284 (2d Cir. 1997)...........................................................................11, 12

*Geo-Grp. Commc'ns, Inc. v. Jaina Sys. Network, Inc.*,
    144 A.D.3d 598 (1st Dep't 2016) ......................................................................8, 9

*Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*,
    No. Civ-88-1165E, 1991 WL 46487 (W.D.N.Y. Mar. 25, 1991)...........................13

*Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*,
    916 F.2d 63 (2d Cir. 1990)..................................................................................16

*Legacy Agency v. Praver Shapiro Sports Mgmt., LLC*,
   Case No. 2014-5 (MLBPA Arb. Nov. 19, 2014) ...............................................................14, 15

*Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*,
   196 F.3d 117 (2d Cir. 1999) ...................................................................................................9

*Marine Pollution Serv., Inc. v. Local 282, Int'l Bhd. of Teamsters*,
   857 F.2d 91 (2d Cir. 1988) ...................................................................................................13

*MLBPA v. Garvey*,
   532 U.S. 504 (2001) ...............................................................................................................8

*NFL Mgmt. Council v. NFL Players Ass'n*,
   820 F.3d 527 (2d Cir. 2016) ...............................................................................................8, 9

*Saint Mary Home, Inc. v. Serv. Emps. Int'l Union*,
   116 F.3d 41 (2d Cir. 1997) ...................................................................................................17

*United Paperworkers Int'l Union v. Misco, Inc.*,
   484 U.S. 29 (1987) ..............................................................................................................9, 12

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*,
   363 U.S. 593 (1960) ...............................................................................................................16

*White v. NFL*,
   92 F. Supp. 2d 918 (D. Minn. 2000) .......................................................................................1

## Statutes

29 U.S.C. § 159(a) .............................................................................................................................1

29 U.S.C. § 185 .................................................................................................................................7

N.Y. C.P.L.R. 7510 ...........................................................................................................................8

## Arbitration Decisions

*Athletes' Careers Enhanced & Secured, Inc. v. Borkin*,
   Case No. 2017-2 (MLBPA Arb. Nov. 20, 2017) ...................................................................15

*Beverly Hills Sports Council v. Mato Sports Mgmt. LLC*,
   Case No. 2016-1 (MLBPA Arb. July 1, 2016) .......................................................................14

*Scoffield v. Legacy Agency, Inc.*,
   Case No. 2020-5 (MLBPA Arb. May 6, 2020), *clarified* (June 15, 2020) ..................... *passim*

**Other Authorities**

AAA, *Panel of Mediators Qualification Criteria*, https://adr.org/sites/default/files/ document_repository/AAA%20National%20Roster%20of%20Mediators%20 Qualification%20Criteria.pdf (last visited Aug. 19, 2020)......................................................18

David McLean, Latham & Watkins LLP, *Selecting a Party-Appointed Arbitrator in the US* (Nov. 3, 2014), https://www.lw.com/thoughtLeadership/ us-arbitration-primer-lexis-latham-series ........................................................................................18

MLBPA Regulations Governing Player Agents ................................................................. *passim*

Sylvia P. Skratek, *Biography*, https://www.skratek.com (last visited Aug. 19, 2020) ........................................................................................................................................17

15 Willison on Contracts (4th ed. 2020) ..................................................................................11

## INTEREST OF *AMICUS CURIAE*

The Major League Baseball Players Association ("MLBPA" or the "Association") is the exclusive representative of Players in Major League Baseball ("MLB") under section 9 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a).   In the collectively bargained agreement between MLBPA and MLB, known as the "Basic Agreement," MLB both "recognize[s] the Association as the sole and exclusive collective bargaining agent for all Major League Players," and agrees that "an individual Player shall be entitled to negotiate in accordance with the provisions set forth in this Agreement … an individual salary and … additional benefits."  Basic Agreement art. II (quoted in MLBPA Regulations Governing Player Agents [hereinafter "MLBPA Regulations"] § 1(B)).[1]  The Player may designate an Agent to conduct these negotiations, *id.* art. IV, provided that the Agent has been certified by MLBPA "to act as a Player Agent," *id.*   Thus, pursuant to its authority under section 9 and the Basic Agreement, MLBPA has delegated a portion of its exclusive representational authority to the Agents that it certifies.

As a result, MLBPA has plenary authority to regulate Player Agents.  *See, e.g.*, *Collins v. Nat'l Basketball Players Ass'n*, 850 F. Supp. 1468, 1475 (D. Colo. 1991), *aff'd*, 976 F.2d 740 (10th Cir. 1992); *White v. NFL*, 92 F. Supp. 2d 918, 924 (D. Minn. 2000); *Black v. NFL Players Ass'n*, 87 F. Supp. 2d 1 (D.D.C. 2000).  To ensure that Player Agents meet eligibility standards and "act in the best interests of the Players they represent," and "[t]o provide … Player Agents … with fair, cost-effective and expeditious procedures for privately resolving any disputes concerning their relationships, transactions or contractual obligations," MLBPA

---

[1] These Regulations are attached to the Answer and Cross-Petition to Vacate Arbitration Award ("Cross-Petition"), filed by Brodie Scoffield ("Scoffield") *et al.*, at Exhibit B.

Regulations § 1(A), MLBPA promulgated its Regulations Governing Player Agents.  The Award that is the subject of The Legacy Agency, Inc.'s Verified Petition to Confirm Arbitration Award ("Petition") and Scoffield's Cross-Petition was issued by an arbitrator acting under the MLBPA Regulations and involves Player Agents certified by MLBPA.  In her Award, the Arbitrator interprets and applies the MLBPA Regulations.  *See Scoffield v. Legacy Agency, Inc.*, Case No. 2020-5 (MLBPA Arb. May 6, 2020), *clarified* (June 15, 2020) ("Award").[2]  For both reasons, MLBPA has a strong interest in this case.

In his Cross-Petition, Scoffield[3] argues that the Award should be vacated.  His arguments fail to reflect the deference owed to an Arbitrator's reading of the Regulations and suggest that the Arbitrator was not appropriately qualified.  MLBPA has a strong interest in the interpretation and application of its Regulations and in the reputation of the Arbitrators who resolve disputes under the Regulations.  It files this brief to support both confirmation of the Arbitrator's award and the Arbitrator herself.

## BACKGROUND

As the parties have explained, this case involves a dispute between an agency, The Legacy Agency, Inc. ("Legacy"), and its former employee, Scoffield, who is a certified Player Agent under the MLBPA Regulations, representing a number of Players. ███████████

██████████████████████████████████████████████████████████

---

[2] The Award is attached to the Petition at Exhibit A.

[3] Neither Meghan Whelan nor Chris Amezquita oppose confirmation of the Award at issue.  *See* Cross-Petition 1 n.2.  Thus, MLBPA refers only to Scoffield herein.

█ ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████  █████

██████████████████████████████████████████████

**ARGUMENT**

**INTRODUCTION**

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[5] The clarification decision is Exhibit B to the Petition.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████

       ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████       It is far from unusual for courts or

parties to treat a requirement of "breach" as a requirement of "material breach," *see infra* at 10-

12. ████████████████████████████████████████████████████████

████████████

       ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

The cases Scoffield cites to support his arguments are not helpful to him.  ██████████

████████████████████████████████████████

████████████████████

Finally, Scoffield disparages the Arbitrator, implying that the Award should not receive deference for that reason.  In fact, the Arbitrator is a distinguished, credentialed, and experienced professional.  The Award should be confirmed.

## I.	Courts Review Arbitral Awards, Including The Arbitrator's Contract Interpretations And Remedial Decisions, With Great Deference.

### A.	Standard of Review

The parties disagree about the law that applies to review of this Award.  Legacy contends that New York Civil Practice Law and Rules ("CPLR") 7510 provides the governing law, as specified in the parties' employment agreement, *see* Brief in Support of Petition 3-4, 5 (citing Exhibit D, § 9(b)).  Scoffield claims that the MLBPA's arbitration regime is the product of a collective bargaining agreement and a delegation under federal labor law and should therefore be reviewed under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *see* Cross-Petition 16.  MLBPA agrees with Scoffield.  As described in the Statement of Interest, MLBPA's right to regulate Agents results from its representational authority under the NLRA; it is also conducted pursuant to its collectively bargained Basic Agreement with MLB.  Enforcement of the Regulations implicates numerous concerns under federal labor law, including the NLRA and the LMRA.  *See supra* at 1 (citing cases explaining the relationship between

agent regulation and collective bargaining).  Although there is no clear judicial guidance on this issue, MLBPA respectfully submits that courts should consider the labor law context in reviewing awards arising out of labor unions' regulation of those to whom they delegate NLRA bargaining authority and that state law does not do so.[6]

The resolution of this question is, however, unnecessary here.  The Award should be confirmed under either standard.

Under both regimes, judicial review of an arbitration award is "very limited," *e.g.*, *MLBPA v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam); *see also Geo-Grp. Commc'ns, Inc. v. Jaina Sys. Network, Inc.*, 144 A.D.3d 598, 598-99 (1st Dep't 2016) ("Judicial review of arbitration awards is extremely limited …."). Under both regimes, "a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in our law."  *NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016).  *See also* N.Y. C.P.L.R. 7510 (specifying narrow, specific grounds for vacatur under New York law).  In both regimes, moreover, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept," and a court should "not reject those

---

[6] Legacy asserts that Scoffield lacks standing to seek review under section 301 and that section 301 does not preempt review under state law.  *See* Memorandum of Law in Opposition to Respondents' Cross Petition to Vacate Arbitration Award and in Reply in Further Support of Verified Petition to Confirm Arbitration Award ("Reply"), pts. I & III.  These arguments are relevant to claims to enforce collective bargaining agreement, but that is not Scoffield's argument.  His argument is that review of an award issued under the Regulations is closely enough related to collective bargaining authority under the NLRA and the Basic Agreement to require review under section 301.  As noted in text, no court has directly addressed this issue.

findings simply because it disagrees with them." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987).  *See also Burt Bldg. Materials Corp. v. Int'l Bhd. of Teamsters*, 18 N.Y.2d 556, 558 (1966) ("[D]isagreement … with the way the arbitrator resolves a dispute … is not a statutory ground upon which an award may be vacated." (citations omitted)); *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978) (arbitral award must be upheld if it "offer[s] even a barely colorable justification for the outcome reached").

More specifically, "[i]t is the arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad, or ugly.'" *NFL Mgmt. Council*, 820 F.3d at 536 (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013)).  Federal courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  *Misco*, 484 U.S. at 38.  "[E]ven if an arbitrator makes mistakes of fact or law," the court "may not disturb an award so long as he acted within the bounds of his bargained-for authority."  *NFL Mgmt. Council*, 820 F.3d at 532; *see also Misco*, 484 U.S. at 39 (an arbitrator's "improvident, even silly factfinding" is not a basis for refusal to enforce); *Geo-Grp. Commc'ns*, 144 A.D.3d at 599 (arbitration awards "will not be overturned merely because the arbitrator committed an error of fact or of law").[7]  Applying either standard, the Award should be confirmed.

---

[7] *See also E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (court must uphold the award even if it "is convinced [the arbitrator] committed serious error"); *Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124-25 (2d Cir. 1999) (court must enforce the award notwithstanding its view that the decision is "very incorrect"); *Misco*, 484 U.S. at 37-38 ("[I]t is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.").

**B.**     **The Arbitrator's Reading of the Regulations and Factual Findings Are Entitled to Deference**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████      And even if it were not, it is the

Arbitrator's reading and entitled to deference.  ██████████████████████████████

███████████████████████████████████████████████████████

████████████████████      Finally, the cases Scoffield cites do not even arguably involve

contract interpretation, but arbitral refusals to impose the clear, precise remedy dictated by

contract (*e.g.*, substituting money damages for a contractual requirement of reinstatement).  They

do not apply where, as here, the Arbitrator is interpreting the "contract" at issue.

First, there are numerous contexts in which courts, ██████████████████  have required

that a *material* breach—rather than any breach—occur in order to void a contract or other

obligation. ███████████████████████████████████████████

███████████████████████████████

For example, courts view the voiding or rescission of a contract "is an extraordinary remedy for breach of contract"; thus, "federal and state courts within the Second Circuit permit parties to rescind contracts [only] when the breach that precipitates it is of a material nature." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 14 F. Supp. 2d 302, 305 (S.D.N.Y. 1998), *rev'd on other grounds*, 193 F.3d 109 (2d Cir. 1999); *see also Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980) ("Rescission is not appropriate when the failure 'was not a breach going to the root of the contract.'"); *Callanan v. Keesville, Ausable Chasm & Lake Champlain R.R.*, 199 N.Y. 268, 284 (1910) (rescission "is not permitted for a slight, casual, or technical breach, but, … only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties making the contract").

███████████████████████████████████████████

█████████████████████████████████████

Likewise, in a decision interpreting the requirement under New York Obligations Law that an executory accord must be "performed according to its terms," the Second Circuit explained that "not every breach, however insubstantial, will allow a plaintiff to disregard an executory accord and sue on its original claims." *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 287 (2d Cir. 1997); *see also* 15 Willison on Contracts § 44:52 (4th ed. 2020). The court explained that "[s]uch an interpretation could lead to absurd and inequitable results where, despite a debtor's substantial performance in reliance on an executory accord, the most trivial breach could revive a creditor's original claims." *Frank Felix Assocs.*, 111 F.3d at 287. Significantly, the court added "based on ordinary contract principles, a non-material breach does

not justify nonperformance by the other party." *Id.  See id.* at 288 ("Our conclusion is also consistent with the view taken in the Restatement (Second) of Contracts, which … include[s] the requirement that for an obligor's duties to be discharged on account of failed performance, the obligee's failure to perform must be material.").  The Second Circuit interpreted the requirement that a contract be "performed according to its terms," and concluded that not every breach of those terms—only a material breach—would justify non-performance.  ███████████

████████████████████████████████████████████████

██████████

        █████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████   █

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

        But even if the Arbitrator's reading of the Regulations and finding of facts were wrong, the Award should be upheld.  "[I]t is the *arbitrator's* view of the facts and of the meaning of the contract that they have agreed to accept," and "a court should not reject an award on the ground that the arbitrator misread the contract."  *Misco, Inc.*, 484 U.S. at 37-38 (emphasis added).  Plainly, the Award satisfies this lenient standard.[8]

_____

   █ ██████████████████████████████████████████████

██████████████████████████████████████████████████

The cases Scoffield cites do not support vacatur here.  All involve not interpretation of—but direct contradiction of—clear contractual language.  *See Bragg v. Kalikow Family P'ship*, No. 19-cv-8801 (KPF), 2020 U.S. Dist. LEXIS 76723, at *24-25 (S.D.N.Y. Apr. 30, 2020) (the agreement provided that an unjustly discharged employee "shall" be reinstated and the arbitrator found unjust discharge but refused to reinstate the employee); *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (per curiam) (the agreement authorized the employer to terminate employees based on good cause; the arbitrator found a good cause termination but reduced the termination to a probation); *Marine Pollution Serv., Inc. v. Local 282, Int'l Bhd. of Teamsters*, 857 F.2d 91, 93 (2d Cir. 1988) (the agreement contained seniority provisions that the arbitrator declined to enforce on fairness grounds); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, No. Civ-88-1165E, 1991 WL 46487, at *1 (W.D.N.Y. Mar. 25, 1991) (the agreement authorized the employer to terminate employee who crossed the picket line "*at his own* discretion," but the arbitrator found the result unfair and reinstated the employees).

██████████████████████████████████████████████████████████

███████████████████████████████████████████ This argument over-reads those decisions which are not on point; and ignores that the Arbitrator's view of the relevance and meaning of these decisions is itself entitled to deference.

────────────────────────────

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████

<div style="background:black"> </div>

---

[9] The decision is Exhibit C to the Cross-Petition.

[10] This decision is Exhibit D to the Cross-Petition.



██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████   But even if this reading of the

Regulations is incorrect, it is entitled to judicial deference.

████████████████████████████████████████

████████████████████████████████   If error, this was invited error

and thus waived.  *See also* Reply 17.

In any event, judicial deference to arbitral awards extends to the arbitrator's choice of remedies.  Indeed, the Supreme Court has explained that the arbitrator "is to bring his informed judgment to bear in order to reach a fair solution of a problem.  *This is especially true when it comes to formulating remedies*."  *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (emphasis added).  Of course, an arbitrator cannot "impose a remedy which directly contradicts the express language" of the Regulations.  *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990).  But that is not what happened here.  ████████████████████████████████████████

████████████████████████████   ████████████████████   ██

██████████████████████████████████████████████

In sum, "[w]hen an 'arbitrator explains [her] conclusion[] … in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result.'" *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union*, 116 F.3d 41, 44 (2d Cir. 1997) (quoting *Andros Compania Maritima*, 579 F.2d at 704). The Award easily meets that standard and should be confirmed.

## II.    The Arbitrator Is A Distinguished Professional And Experienced Sports Arbitrator.

Under the Regulations, an arbitrator appointed to resolve disputes between an Agent and his or her Agency must be "a professional and skilled Arbitrator distinguished in the field of labor relations and/or contract interpretation." MLBPA Regulations § 7(A)(8). The Arbitrator here indisputably meets this description.

In his Cross-Petition, Scoffield observes that the Arbitrator "apparently does not have a law degree and was just newly appointed by the MLBPA to serve as an arbitrator." Cross-Petition 15 n.5. He contrasts her credentials with other MLBPA arbitrators whom he describes correctly as "distinguished sports lawyers with legal degrees and professors in sports law at prestigious law schools." *Id.* at 15-16. MLBPA strongly disagrees with the insinuation that the Arbitrator was not fully qualified by education and experience. Her Award is entitled to deference.

As her biography reveals, *see* https//www.skratek.com, Arbitrator Sylvia Skratek received a Ph.D. from University of Michigan in 1985. She has been an arbitrator in numerous different contexts and industries since 1986; she is an adjunct professor who teaches classes related to arbitration. She serves on the Board of Governors of the National Academy of

17

Arbitrators; she is a member of the American Arbitration Association ("AAA").  Critically, she has served on the permanent panels of MLB and MLBPA Salary Arbitration and of National Hockey League and National Hockey League Players' Association Salary Arbitration.  She is, accordingly, a learned and experienced arbitrator.  And she is "newly appointed" only to the roster of arbitrators under MLBPA's Regulations; she has significant prior experience as a sports arbitrator.  MLBPA is aware of no authority for the proposition that an arbitrator must be a lawyer to receive deference, and respectfully submits that the law is otherwise.[12]

---

[12] Indeed, AAA requires only that its arbitrators have industry experience, not law degrees.  *See* AAA, *Panel of Mediators Qualification Criteria*, https://adr.org/sites/default/files/ document_repository/AAA%20National%20Roster%20of%20Mediators%20Qualification%20C riteria.pdf (last visited Aug. 19, 2020); David McLean, Latham & Watkins LLP, *Selecting a Party-Appointed Arbitrator in the US*, at 3 (Nov. 3, 2014), https://www.lw.com/thoughtLeadership/ us-arbitration-primer-lexis-latham-series ("AAA neutrals can include industry experts who are not lawyers").

## CONCLUSION

The Award should be confirmed.

Dated: New York, New York
          August 21, 2020

Respectfully submitted,

/s/ Eamon P. Joyce
Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
ejoyce@sidley.com

Virginia A. Seitz (*pro hac vice application forthcoming*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
vseitz@sidley.com

Ian Penny
General Counsel
MAJOR LEAGUE BASEBALL PLAYERS
    ASSOCIATION
12 E. 49th Street
New York, NY 10017
(202) 826-0808

*Counsel for Amicus Curiae Major League Baseball Players Association*

19

## CERTIFICATE OF COMPLIANCE

Pursuant to part II.D of this Court's individual practices, I certify that the foregoing brief (i) contains 5,350 words, excluding the cover page, Table of Contents, Table of Authorities, and signature block, as determined by the word-count feature of Microsoft Word; and (ii) complies with the Court's formatting rules.

Dated: August 21, 2020

/s/ Eamon P. Joyce
Eamon P. Joyce